# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

HK Corporation
776 Woodland Hills Blvd
Victoria, MN 55386

Court File No. 19-2102

Vijitha Santhosh
810 Lake St E
Minneapolis, MN 55407

**COMPLAINT**

           Plaintiffs,

v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES
Office of Chief Counsel
20 Massachusetts Avenue, NW
Washington DC 20529

KENNETH T. CUCCINELLI
Acting Director, U.S. Citizenship and
Immigration Services, in his Official Capacity
20 Massachusetts Avenue, NW
Washington DC 20529

           Defendants.

## SUMMARY AND NATURE OF ACTION

1.      Plaintiffs HK Corporation ("HK") and Vijitha Santhosh ("Ms. Santhosh") bring

this action to challenge the arbitrary, capricious, and unreasonable decision of the U.S. Citizenship

and Immigration Services ("USCIS") to deny HK's H-1B petition. Plaintiffs also seek an order

that would allow HK to continue to employ Ms. Santhosh in the highly specialized position of

Business Development Specialist at HK's United States headquarters and multiple retail sites in

the Minneapolis/St. Paul area of Minnesota. Because of USCIS's unreasonable denial decision,

Ms. Santhosh would be forced to stop working on August 28, 2019 when her current status expires.

2.       USCIS's decision to deny HK's H-1B petition has all the hallmarks of an arbitrary and capricious agency decision. First, USCIS misstated the nature of HK's business in a manner that suggests USCIS did not consider the evidence demonstrating HK's business operations, and particularly the evidence demonstrating that HK requires its Business Development Specialist to hold a Master's Degree in Business Administration (MBA). USCIS's denial decision claims that HK operates "four gas stations" when, in fact, HK owns *one* gas station, but also operates other businesses including a liquor store and a multi-use facility offering affordable housing and commercial-retail space. USCIS's description of HK's operations as "four gas stations," reflects, at a minimum, a failure to consider material evidence submitted.

3.       Second, perhaps because of its first error, USCIS did not consider evidence demonstrating the specialized nature of the beneficiary's job duties, including significant research and strategic planning for HK's business expansions. HK introduced evidence of Ms. Santhosh's work, including evidence that she designed the strategy for expanding HK's retail liquor and convenience store businesses and that, most recently, Ms. Santhosh created the "micro apartment" affordable housing business plan for a property to target underserved populations in Minneapolis. This evidence all shows that Ms. Santhosh's position qualifies as a specialty occupation.

4.       Third, in addition to ignoring evidence, USCIS dismissed any evidence contrary to its conclusion without analysis. Specifically, USCIS summarily dismissed an expert opinion, demonstrating *specifically* that the "industry standard" for Business Development Specialists is to hold a bachelor's degree or higher in a specific specialty.  The expert opinion was based on the expert's substantial experience in the industry, including experience hiring employees to work in positions similar to HK's position. The expert relied on his experience to explain why anyone employed as a Business Development Specialist for HK or another business in the industry would

be required to hold at least a bachelor's degree in a specific specialty, and likely an MBA in particular. USCIS dismissed the opinion based solely on the fact that it "declar[ed] a [business development specialist] position to be professional in nature." It was unreasonable for USCIS to reject the reasoned opinion of an expert only because USCIS disagreed with the conclusion.

5.      Fourth, USCIS concluded that the Business Development Specialist position does not "normally" require a bachelor's degree or higher in a specific specialty, but defined the term "normally" in a manner that was unreasonable, and which has been rejected by courts. USCIS did not accept the explanation from the Department of Labor's Occupational Outlook Handbook (OOH) and O*Net, which provides that the position "typically" or "often" requires a bachelor's degree in a specific specialty and that "most" positions require a bachelor's degree in a specific specialty. It seems axiomatic that terms like "typically," "often," and "most" should be understood to mean "normally." Yet USCIS concluded the opposite. Not surprisingly, this exact type of interpretation by USCIS has been rejected by courts. *See Next Generation Tech., Inc. v. Johnson*, No.15-cv-5663, 2017 WL 4685275 (S.D.N.Y. Sep. 29, 2017).

6.      Finally, USCIS's denial marked a reversal from earlier decisions when it approved HK's H-1B petition for the same beneficiary based on the same position. USCIS's decision does not even acknowledge its earlier decisions, much less explain what circumstances would justify a change in its decision. USCIS cannot reverse its position without at least acknowledging that its new decision is a reversal, and explaining what circumstances might justify the change.

7.      As these examples illustrate, USCIS's decision represents an abuse of discretion because it (a) purported to require evidence that was irrelevant to the question of whether HK proved by a preponderance of the evidence that Ms. Santhosh's position is a specialty occupation, (b) entirely ignored evidence provided by HK that contradicts the basis for USCIS's denial, (c)

misapplied the relevant legal standard; and (d) marked a dramatic reversal in USCIS's interpretation of the very same record in 2013 and 2016—which both led to approvals —without any explanation for the change.

8.      To the extent USCIS's denial decision is entitled to deference, the decision is arbitrary and capricious and should be overturned. As described above, the decision has all the hallmarks of an abuse of discretion: it ignores relevant evidence, purports to require obviously irrelevant evidence, and changes the evidentiary and legal standards in order to reach a seemingly pre-determined denial.

9.      The timing of USCIS's decision creates significant hardship for HK and for Ms. Santhosh and her family. If this Court does not act to reverse USCIS's decision, Ms. Santhosh and her family will be forced to leave the United States after her current H-1B status expires on August 28, 2019. This also will create significant hardship to HK, which will lose a necessary employee along with all the benefits created by having Ms. Santhosh's knowledge and experience at its Minnesota locations.

10.     With this lawsuit, HK requests an order remanding the denial decision to USCIS for approval of the H-1B visa petition. Alternatively, HK requests an order remanding the decision for reconsideration and maintaining the status quo that existed before the denial of HK's petition, thus permitting Ms. Santhosh to remain in the country and continue to work for HK in the capacity she was working before the petition was denied. *See, e.g., Zuora Inc. v. Baran et al.*, Case No. 18-cv-01949. Docket No. 22 Temporary Restraining Order to Show Cause (N. D. Ca. April 6, 2018).

## JURISDICTION

11.     HK brings this civil action under 5 U.S.C. § 701 et seq., the Administrative

Procedure Act ("APA"), 28 U.S.C. § 1331(federal subject matter jurisdiction), 8 U.S.C. § 1101 et

seq., the Immigration and Nationality Act ("INA"), and 28 U.S. C. § 1361.

12.     Under the APA, "[a] person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of the relevant statute, is

entitled to judicial review thereof." 5 U.S.C. § 702. Agency action includes the denial of a Petition

for a Nonimmigrant Worker (Form 1-129) filed pursuant to 8 U.S.C. § 1101(a)(15)(H).

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this suit

"arises under" a "right of action" created by the APA. *Bowen v. Massachusetts,* 487 U.S. 879

(1988) ("[I]t is common ground that if review is proper under the APA, the District Court ha[s]

jurisdiction under 28 USC § 1331.").

## EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED

14.     The USCIS decision denying HK's H-1B petition constitutes a "final agency

action" for purposes of APA review. *See* 5 U.S.C. § 704. The decision "mark[s] the consummation

of the agency's decisionmaking process" and is an action "by which rights or obligations have

been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154,

177-78 (1997).

15.     HK is not required to exhaust any administrative appeal before filing this action in

U.S. District Court. "[A]n appeal to 'superior agency authority' is a prerequisite to judicial review

only when expressly required by statute or when an agency rule requires appeal before review and

the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S.

137, 154 (1993). Neither condition applies here. The applicable regulation, 8 C.F.R. §

103.3(a)(1)(ii), provides: "Certain unfavorable decisions on applications, petitions, and other types

of cases *may* be appealed." (Emphasis added). The agency's regulations therefore do not require

that an appeal be completed before court action, and the agency's decision is not stayed pending

administrative review.

## VENUE

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the

Defendants reside in the District of Columbia.

## THE PARTIES

17.     Plaintiff HK Corporation is a Minnesota corporation, headquartered in Victoria,

Minnesota.

18.     Plaintiff Vijitha Santhosh resides in Minnesota and is the beneficiary of HK's H-

1B petition.

19.     Defendants U.S. Department of Homeland Security ("DHS") and USCIS are

"agencies" within the meaning of 5 U.S.C. § 552(f). USCIS is charged with responsibility for the

administration of relevant provisions of the INA.

20.     Defendant Kenneth T. Cuccinelli is Acting Director of USCIS. He is sued in his

official capacity.

## STATUTORY AND REGULATORY BACKGROUND

21.     The H-1B nonimmigrant classification of the Immigration and Nationality Act

(INA) provides for admission to the United States of temporary workers hired by U.S. employers

to perform services in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b).

22.     "Specialty occupation" is defined by the statute as an occupation that requires (A)

theoretical and practical application of a body of highly specialized knowledge, and (B) attainment

of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry

into the occupation in the United States. 8 U.S.C. § 1184(i).

23.     Agency regulations further enumerate the four criteria—of which a position must meet one—to qualify as a specialty occupation pursuant to 8 U.S.C. § 1184(i): (1) a bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position; (2) the degree requirement is common to the industry in parallel positions among similar organizations, or the particular position is so complex or unique that it can be performed only by an individual with a degree; (3) the employer normally requires a degree or its equivalent for the position; or (4) the nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a bachelor's or higher degree. 8 C.F.R. §214.2(h)(4)(iii)(A).

## FACTS

### *HK Corporation's Retail Markets*

24.     Plaintiff HK Corporation ("HK") was founded in 2009 and operates multiple retail sites in the Minneapolis/St. Paul (i.e., Twin Cities) area. Its trade name (i.e., "Doing Business As" or DBA) is SuperAmerica #4871. HK maintains its headquartered in Victoria, MN. Its other places of business include one location in Spring Lake Park, MN, and two locations in Minneapolis, MN.

25.     HK's retail operations include a gas station/convenience store, SuperAmerica (#4871), and a liquor store, Hi-Lake Liquors. The corporation also recently purchased a multi-use facility for various office and retail establishments. In 2017, HK grossed over $8.5 million in revenues from its collaborating businesses.

26.     HK offers a wide variety of products and services between its multiple retail locations. As a convenience store and gas station, its SuperAmerica location has recently expanded its operations to include lottery machines, and also ethnic food categories for the diverse community in which the store is located. As evidenced in the record, this successful expansion was

proposed and implemented by Ms. Santhosh in her capacity as Business Development Specialist based on her expert market and financial research.

27.     HK's liquor store, Hi-Lake Liquors, serves an array of beer, wine and spirits in the heart of a growing Minneapolis community. Again, this expansion of HK's business operations was proposed and implemented by Ms. Santhosh using in-depth analysis of market trends, personnel management, marketing strategies and financial projections.

28.     HK has recently acquired a multi-use retail site for which it is in the process of developing additional business expansion initiatives. For example, as the record shows, Ms. Santhosh recently proposed a lucrative "micro apartment" affordable housing business plan for the property to target underserved Minneapolis residents.

### Ms. Santhosh's Employment with HK

29.     Vijitha Santhosh (Ms. Santhosh) is a highly educated Indian citizen. She earned her Master of Business Administration in Human Resources from Globe University in Minneapolis, MN, in June 2012. The Master's Degree was a three-year program during which Ms. Santhosh took courses in managerial communications, business ethics and law, marketing management, fiscal resources management, research and business project development, among others.

30.     HK hired Ms. Santhosh as Business Development Specialist in 2013. HK applied for an H-1B visa for Ms. Santhosh for this position as a "specialty occupation," with the required certification from the Department of Labor (DOL) for her position as Business Development Specialist, as well as supplemental documentation in the form of letters of support, detailed description of duties, credentials, sample work product, and other evidence of industry standards. On May 14, 2013, USCIS approved the H-1B for the standard three-year period.

31.     In May 2014, HK filed an I-140 immigrant petition for Ms. Santhosh. USCIS

approved the petition under INA § 203(b)(2), member of profession with advanced degree or of exceptional ability (i.e., class 2), and set Ms. Santhosh's priority date for October 22, 2013. This I-140 approval demonstrates that USCIS was already satisfied that HK could not find any qualified, interested U.S. worker for Ms. Santhosh's critical position with the company.

32.     While waiting for her priority date to become current, HK applied for an extension of Ms. Santhosh's H-1B upon its expiration in August 2016, claiming the same "specialty occupation" of market research analyst. USCIS approved the H-1B extension on March 28, 2016. Her current H-1B visa expires on August 28, 2019.

33.     Ms. Santhosh has been employed by HK in the position of Business Development Specialist since 2013. Her primary office is located at one of the two Minneapolis, MN, work sites operated by HK, and her secondary office is located at the Victoria, MN, headquarters. However, Ms. Santhosh's duties require her part-time presence at each of the four current work sites.

34.     As Business Development Specialist, Ms. Santhosh conducts highly specialized market and financial data analysis and advises HK on strategic growth in a competitive market across several retail industries. She makes research-based business decisions for HK regarding product pricing, marketing strategies, and human resources management in a role that places her above the other administrative and financial professionals employed by HK.

35.     Ms.   Santhosh   conducts   extensive   market   research   across   the   gas station/convenience store, liquor store, affordable housing, and other retail industries; and prepares business plans for HK based on her in-depth analysis of how HK can strategically grow its profits within a highly saturated market. Her research includes using statistical software to gather data on competitors' prices, sales and marketing; measuring the effectiveness of both HK's and competitors' merchandising and marketing initiatives; and preparing detailed reports of market

conditions and profit-making strategies.

36.     Ms. Santhosh leads HK in implementing marketing and business initiatives to grow its operations, maximize investments and improve efficiency. This role requires a sophisticated understanding of financial reporting, relevant tax regulations, competitive pricing of gas station operations, the overhead for running a liquor store, comparative profitability of convenience store product offerings, and anticipated retail market conditions that only a highly educated and experienced research analyst can attain.

37.     Ms. Santhosh's knowledge and expertise has enabled HK to successfully expand and modify its product offerings, increase and diversify its staff, and react to changing market conditions over the past six years. Ms. Santhosh is integral to the development and success of HK's business operations in multiple retail markets. As previously stated, since Ms. Santhosh's hire, HK has not only expanded the operations of its SuperAmerica convenience store and gas station, but also grown to include a liquor store and a multi-use retail facility.

### *USCIS's Denial of the 2019 H-1B Petition*

38.     As of January 2019, the final action date for class 2 employment-based immigrant visa petitions of Indian citizens is April 1, 2009—more than four years before Ms. Santhosh's priority date. Under the H-1B extension provision, § 104(c), of the American Competitiveness in the Twenty-First Century Act (AC21), foreign nationals unable to apply for permanent residence because a visa is not yet available are able to request H-1B extensions beyond the normal six-year limitation on the basis of that delay in immigrant visa availability. *See* American Competitiveness in the Twenty-First Century Act (AC21), Title 1, § 104(c), Pub. L. 106-313 (Oct. 17, 2000).

39.     Pursuant to AC21, HK filed a petition for a second H-1B extension of Ms. Santhosh's position. HK filed the petition in December 2018 to notify USCIS of the change in Ms.

Santhosh's primary work site from Victoria, MN, to Minneapolis, MN. Once again, the Department of Labor (DOL) certified her position as a qualifying Market Research Analysts and Marketing Specialists position, recognizing that Ms. Santhosh's wage rate at HK placed her at Wage Level IV. Wage Level IV wage rates are assigned to positions in which the employee uses advanced skills and diversified knowledge to solve unusual and complex problems. Ms. Santhosh's wage rate further demonstrating the highly specialized nature of her occupation.

40.     In accordance with filing instructions and past practice, HK submitted as evidence: the Labor Condition Application endorsed and authorized by the DOL; HK's support letter describing Ms. Santhosh's position and job duties; documentation of the two prior H1-B approvals in 2013 and 2016, and the immigrant visa approval in 2014; Ms. Santhosh's education record and credentials; the DOL Occupational Outlook Handbook (OOH) and O*Net data classifying Market Research Analysts and Marketing Specialists as a specialty occupation; industry information illustrating minimum requirements for entry and job duties common to market research analyst positions; and sample work product of Ms. Santhosh demonstrating strategic and highly specialized operational, marketing, and financial analysis required of Ms. Santhosh in her position as Business Development Specialist for HK.

41.     On February 27, 2019, USCIS issued a Request for Evidence (RFE), alleging that HK did not provide sufficient documentation establishing the position as a specialty occupation.

42.     In April 2019, HK submitted its timely response with additional documentation pursuant to the RFE, including: a second support letter from HK further detailing Ms. Santhosh's position and job duties; an industry expert statement confirming the complex and highly specialized nature of the position and its minimum educational requirement; additional work product samples from Ms. Santhosh demonstrating the significant market and financial data

analysis required of her position; numerous job postings for similar market research analyst positions illustrating minimum educational requirements across the industry; and legal memorandum, relevant case law, and USCIS's own policy on H-1B adjudication demonstrating the sufficiency of the documentation provided and the position's qualification as a specialty occupation.

43.     On June 19, 2019, USCIS issued its decision denying H1-B status for Ms. Santhosh, alleging that HK did not establish that her position qualifies as a specialty occupation. Its decision misrepresented the DOL and industry evidence that HK provided; it failed to consider the evidence specific to the employer and the offered position; it ignored the relevant law and policy governing adjudication of H-1B petitions that HK put forth; and it did not address its dramatic reversal of USCIS's two prior approvals of the exact same position.

## COUNT I

### Administrative Procedure Act
### 5 U.S.C. § 706(2)(A)

44.     Plaintiffs incorporate the above allegations as if set forth herein.

45.     Plaintiffs have the right to judicial review of USCIS's denial of HK's H-1B petition under 5 U.S.C. §§ 702, 704.

46.     USCIS's actions violate federal regulations, the INA and the Administrative Procedure Act. USCIS's actions in denying HK's H-1B petition constitute an agency action that is arbitrary, capricious, and an abuse of discretion. USCIS's actions therefore are not in accordance with 5 U.S.C. § 706(2)(A).

47.     USCIS's decision to deny HK's H-1B visa petition for Ms. Santhosh was based upon an interpretation contrary to and inconsistent with 8 U.S.C. § 1101(a)(15)(H), 8 U.S.C. § 1184(i)(1)(A)-(B) and 8 C.F.R. 214.2(h)(4)(iii)(A).

48.     Particularly in light of the record providing ample and uncontroverted evidence of the classification Ms. Santhosh's position as a specialty occupation, USCIS's decision was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

49.     USCIS's Request for Evidence and denial letter are riddled with errors regarding Ms. Santhosh's position.

50.     Specifically, USCIS misstates the minimum educational requirement for the position of Business Development Specialist as a "Bachelor's degree," when, in fact, the minimum educational requirement for the position is a master's degree in Business Administration ("MBA"). A master's degree involves one-to-two years of additional education in a specialized field of study following attainment of a bachelor's degree.

51.     USCIS ignored evidence explicitly demonstrating that the educational requirement of the position is an MBA, and consistently misconstrued the requirement as an "undifferentiated bachelor's degree" and a "bachelor's degree in disparate fields of study." The classification of the educational requirement for Ms. Santhosh's position as a "generalized," "generic" or "non-specific" bachelor's degree in business administration is arbitrary.

52.     Apart from misstating the position's minimum educational requirement, USCIS also consistently ignored ample evidence demonstrating that the nature of HK's business operations and the specific duties of the Business Development Specialist position qualify the position as a specialty occupation which requires "theoretical and practical application of a body of highly specialized knowledge."

53.     In support of the petition, HK submitted a company description as well as multiple samples of Ms. Santhosh's work product, which clearly demonstrated (1) the complexity of HK's

business operations across the gas station/convenience store, liquor store, and other retail markets; (2) Ms. Santhosh's integral leadership in these operations as Business Development Specialist; and (3) the requirement of a master's degree in business administration in order to perform the duties and responsibilities of this position. Yet USCIS ignored this evidence in its analysis and purported to require HK to prove the position's classification as a specialty occupation by submitting evidence that "each of the fields of study" under a bachelor's degree in business administration "relate to the duties and responsibilities of the offered position." It was an abuse of discretion for USCIS to consistently misstate the minimum educational requirement of the position and then erroneously conclude, "on the basis of the position's [misstated] educational requirements alone, [HK has] not established that the position is in a specialty occupation as defined [in 8 C.F.R. § 214(i)(1)]."

54.     USCIS also ignored evidence presented by HK demonstrating that compared to the bachelor's degree in a specific specialty commonly required of market research analysts in the industry, the Business Development Specialist position is so complex or unique that it can only be performed by an individual with an MBA. In particular, USCIS ignored evidence demonstrating the correlation between Ms. Santhosh's master's level coursework and the duties and responsibilities of her position at HK; it ignored evidence demonstrating that an MBA is often required when a market research analyst position entails leadership and technical knowledge beyond what is common to positions in the industry; and it ignored evidence, including an abundance of sample work product of Ms. Santhosh and an industry expert statement, demonstrating the complexity of knowledge, skills, and analysis required of the Business Development Specialist position.

55.     In order to find that Ms. Santhosh's position as Business Development Specialist is

not a "specialty occupation," USCIS: (1) misrepresented authoritative evidence it purported to rely on in making its decision; (2) misrepresented uncontroverted proof that the degree requirement for Business Development Specialist is common to the industry; (3) misrepresented uncontroverted proof that the degree requirement for Business Development Specialist is normally required by HK; (4) ignored specific evidence demonstrating the direct relationship between Ms. Santhosh's master's degree in business administration and her duties as Business Development Specialist for HK; (5) ignored significant evidence demonstrating that the Business Development position at HK is so complex or unique that it can be performed only by an individual with a master's degree in business administration; (6) imposed arbitrary evidentiary requirements inconsistent with statutory, regulatory and case law; and (7) failed to explain its departure from its two prior H-1B approvals for the exact same position.

56.     **USCIS misrepresented authoritative evidence it purported to rely on in making its decision.** USCIS misrepresented the Department of Labor's Occupational Outlook Handbook (OOH) and O*Net data confirming the minimum educational requirement by repeatedly stating that evidence that market research analysts "typically" or "often" need a bachelor's degree in a specific specialty and that "most" of these positions require a bachelor's degree in a specific specialty does not establish that a bachelor's degree in a specific specialty is "normally" a minimum requirement for the occupation or that the degree requirement is "common" to the industry. Moreover, USCIS departed from its past practice of recognizing OOH and O*Net data as authoritative evidence in determining whether a particular position qualifies as a specialty occupation.

57.     **USCIS misrepresented uncontroverted proof that the degree requirement for Business Development Specialist is common to the industry.** Specifically, USCIS

misinterpreted the information contained in the industry articles and job postings provided, claiming incorrectly that the evidence showed that the market research analyst position requires nothing more than a general degree. Furthermore, USCIS misrepresented the industry expert opinion provided, alleging that the statement simply "declare[d] a [business development specialist] position to be professional in nature."

58. **USCIS misrepresented uncontroverted proof that the degree requirement for Business Development Specialist is normally required by HK.** USCIS similarly faulted HK for "provid[ing] the name of one employee and included his educational credentials" but failing to acknowledge that: (1) that one employee is the current president of HK, and (2) that the record reflects that the president was the *only* other employee who has ever held the Business Development Specialist position at HK, because (3) HK corporation was formed in 2009 and Ms. Santhosh is the *only* employee to hold the position after HK's president since 2013.

59. **USCIS ignored specific evidence demonstrating the direct relationship between Ms. Santhosh's master's degree in business administration and her duties as Business Development Specialist for HK.** USCIS stated repeatedly in its decision that HK did not provide evidence establishing the relationship between the proffered position and education attained by Ms. Santhosh, willfully ignoring significant evidence demonstrating the unique and complex nature of both HK's business and the Business Development Specialist position. USCIS failed to consider the letters of support, detailed explanation of job duties, educational record, and several work product samples demonstrating the direct relationship between Ms. Santhosh's degree and her duties as Business Development Specialist. Rather, USCIS's denial merely lists the evidence in the record and summarily concludes that the evidence lacks sufficient detail to establish the specialized nature of the position. USCIS specifically ignored detailed evidence

demonstrating the direct relationship between Ms. Santhosh's master's degree coursework and the duties she carries out in her position. USCIS likewise ignored a wealth of sample work product demonstrating the highly specialized knowledge and analysis Ms. Santhosh uses in her position.

60. **USCIS ignored significant evidence demonstrating that the Business Development position at HK is so complex or unique that it can be performed only by an individual with a master's degree in business administration.** USCIS ignored evidence presented by HK demonstrating that compared to the bachelor's degree in a specific specialty commonly required of market research analysts in the industry, the Business Development Specialist position is so complex or unique that it can only be performed by an individual with an MBA. In particular, USCIS ignored evidence demonstrating the correlation between Ms. Santhosh's master's level coursework and the duties and responsibilities of her position at HK; it ignored DOL data demonstrating that an MBA is often required when a market research analyst position entails leadership and technical knowledge beyond what is common to positions in the industry; and it ignored evidence, including an abundance of sample work product of Ms. Santhosh and an industry expert statement, demonstrating the complexity of knowledge, skills, and analysis required of the Business Development Specialist position.

61. **USCIS imposed arbitrary evidentiary requirements inconsistent with statutory, regulatory and case law.** USCIS purported to deny the H-1B petition because HK did not "establish how each field [of study within a generic degree in business administration] is directly related to the duties and responsibilities of the [offered] position." This reasoning is inconsistent with the statutory language of 8 U.S.C. § 1184(i), regulatory language of 8 C.F.R. 214.2(h)(4)(iii)(A), and case law interpretation; exists nowhere in current USCIS policy; and imposes an arbitrary and unreasonable evidentiary burden on the petitioner. Moreover, USCIS

failed to apply the preponderance of the evidence standard required of H-1B adjudication, in which

USCIS determines *by a totality of the evidence* whether the position *more likely than not* qualifies

as a specialty occupation. Finally, USCIS ignored substantial persuasive case law proffered by HK

and instead purported to base its decision on a few other cases that are obviously distinguishable

from the instant case.

62.     **USCIS failed to explain its departure from its two prior H-1B approvals for

the exact same position.** USCIS abused its discretion by denying HK's petition without

acknowledging its past decisions to approve the same petition for the same position. HK's petition

involves the same petitioner and same beneficiary, and it is in all material respects identical to the

petitions filed by HK in both 2013 and 2016, which USCIS approved. In fact, Ms. Santhosh's

position entails more responsibility, complexity, and specialized knowledge in 2019 than it did

when USCIS approved HK's prior petitions. USCIS abused its discretion by denying the H-1B

petition in 2019 without even acknowledging its previous decisions, much less explaining why its

previous decisions should not receive deference in this case. USCIS's failure to acknowledge its

dramatic departure from its prior action contradicts consistent and controlling case law on agency

discretion.

## COUNT II

### Deprivation and Violation of Rights under the INA

63.     Plaintiffs reincorporate the above allegations as if set forth herein.

64.     In denying HK's petition for extension of an H-1B on behalf of Ms. Santhosh,

USCIS unlawfully interpreted and applied the criteria of "specialty occupation" under U.S.C. §

1184(i)(1)(A)-(B) and 8 C.F.R. 214.2(h)(4)(iii)(A). USCIS disregarded relevant evidence and

imposed an impermissibly high burden of proof on HK. *Matter of Pazandeh*, 19 I&N Dec. 884

(BIA 1989).

65.     As a result, USCIS deprived HK of its rights under the INA to benefit from the statute's specialty occupation provisions, and thereby violated those rights. 8 U.S.C. § 1101(a)(15)(H).

## **RELIEF REQUESTED**

Plaintiffs hereby request the following relief:

66.     Hold unlawful and set aside USCIS's decision that HK failed to establish that Ms. Santhosh has been and will be employed in a "specialty occupation;"

67.     Hold unlawful and set aside USCIS's decision denying HK's H-1B petition as not in accordance and contrary to law;

68.     Reverse USCIS's decision as arbitrary, capricious, and contrary to evidence and grant HK's H-1B petition under 5 U.S.C. § 706(2);

69.     In the alternative, if the Court chooses not to reverse USCIS's decision on the H-1B petition, remand the decision for consideration of the H-1B petition as required by the APA;

70.     Grant costs and attorney fees to Plaintiffs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

71.     Grant such further relief as the Court deems just and equitable.

Dated: July 15, 2019                    s/ Matthew Peed_____
                                        Matthew Peed, DC Bar No. 503328
                                        **CLINTON & PEED**
                                        777 Sixth St. NW, 11th Floor
                                        Washington, DC 20001
                                        Telephone: (202) 621-1828
                                        matt@clintonpeed.com

David W. Asp, MN Bar No. 344850
Kailey C. Mrosak, MN Bar No. 400190
**LOCKRIDGE GRINDAL NAUEN**
**P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel:    612-339-6900
Fax:    612-339-0981
dwasp@locklaw.com
kcmrosak@locklaw.com


*Attorneys for Plaintiff*